CITY OF KNOXVILLE v. ORR.—79 S. W. (2d) 613.

Eastern Section. December 22, 1934.

Petition for Certiorari denied by Supreme Court, March 9, 1935.

D. J. Kelly, of Knoxville, for plaintiff in error.

Jennings & O'Neil, of Knoxville, for defendant in error.

AILOR, J. This is an action for damages for the alleged negligence of defendant's employees in causing the death of Herschel A. Orr. Plaintiff, who sues as administratrix of deceased, is his daughter. The declaration seeks to recover $25,000, and alleges that on or about the 12th day of September, 1932, the deceased was at the place of his employment at the plant of the Knoxville Sangravel Company, in Knoxville, Tennessee, where materials for the construction of roads were kept for sale, and that on said date the city of Knoxville was obtaining materials from its stock for the purpose of repairing its streets. That it used a large high-powered truck in hauling such materials from the yard of said Sangravel Company, and had assigned to one of its servants the duty of operating such truck; that while deceased was in the act of passing in front of a machine used in loading said road materials into the truck to be transported and used by the city of Knoxville in repairing its streets, said agent and driver negligently, recklessly, carelessly, unlawfully, and wantonly, without giving any warning to plaintiff's said intestate of his intention so to do, ran, backed, and operated said high

powered motor-propelled truck of defendant city of Knoxville into and against plaintiff's intestate, pushing and shoving him against the metal uprights which constituted a part of the said loading machine, and crushing the skull of plaintiff's intestate between the rear end of defendant's said moving truck and the metal uprights of said machine, as a result of which plaintiff's said intestate was then and there killed, and did die. The declaration was later amended so as to more fully state plaintiff's position, by alleging that at the time the deceased was killed, the said truck was standing on sloping ground, and that by force of gravity it was carelessly, negligently, recklessly, and unlawfully permitted and caused to run into and against plaintiff's intestate, and killing as aforesaid. It was further alleged that the employee of defendant was guilty of gross negligence in failing to warn plaintiff's intestate of the danger to which he was subjected and of his intention to move said truck backward.

A plea of not guilty was entered as to the original and the amendment to the declaration, and a trial by jury resulted in a verdict of $8,000 in favor of plaintiff. From the action of the trial judge in overruling its motion for a new trial and entering a judgment on the verdict, defendant excepted, prayed and perfected its appeal in error to this court.

The facts in this case are very meager. Deceased was an employee of Knoxville Sandgravel Company, and worked as yard foreman or yard superintendent when the company was running at full capacity. At the particular time in question, the company was working only a very few men; the deceased being the only man on the yard. The city of Knoxville was obtaining from said company stone described as pea gravel for making repairs on its streets, and the deceased was not only supervising the loading of trucks hauling the gravel, but he operated the loading machine. The loading was done by means of a motor-driven elevator mounted upon a caterpillar tractor. The motor which operated the elevator also operated the tractor, and was started by a hand crank located on the left side of the machine. In starting the motor, the deceased would go to the left side of the machine and crank it. And he would then return to the right side where all of the controls for operating the tractor and the elevator were located. As the elevator with buckets for carrying the gravel to the truck eat into the pile of gravel, it was necessary to either move the machine closed to the pile or use a shovel in keeping gravel within reach of the revolving buckets.

The truck belonging to the city and alleged to have been handled in such negligent manner as to cause his death was a truck of about five tons capacity with a steel bed. It was being operated by a regular employee of the city of Knoxville, C. H. Adams, by whom it was driven to the yard for a load of gravel. Deceased met the truck at the grate, and rode on it to the pile of gravel from which it was

intended to obtain a load. Before proceeding to load, the rear end of the truck was backed near the steel uprights of the loading machine; the deceased got off the truck, and cranked the machine. After the engine had been started, he crossed to the other side and motioned the driver to back the truck. In compliance with this instruction the truck was backed against the upright bars of the machine, and the loading machinery was put in motion. This is not only testified to by the driver, but it is definitely established, for the reason that it is shown that it was necessary to go to the right side of the machine to put the loading machinery in motion, and there were two piles of gravel in the truck bed when the accident was discovered.

It is the testimony of the driver of the truck that after the process of loading had begun he looked back and saw the deceased with a shovel in his hand going toward the rear of the loading machine, and that he did not thereafter notice him again for the time being. That within an elapsed time thereafter of from two to four minutes, Mr. Stewart, driving another city truck, approached and as he drove up called to the witness. At first he did not understand what was said by Stewart, but on looking back he saw the feet of deceased. When he got out of his truck, he found deceased lying between the truck and the loading machine about eighteen to twenty inches from the rear wheels of the truck. The, truck was a sufficient distance from the nearest part of the loading machine for them to walk between it to pick up deceased, which they did. He testified that he did not move his truck from the time he backed it against the loading machine until deceased was discovered lying between it and the machine. An ambulance was called, but the head of deceased was crushed to such an extent that he died before reaching the hospital. The witness further testified that he set his brakes at the time he backed up to the loading machine, and that his truck did not again move, leaving the inference from his testimony that the loading machine had been moved away from the truck something like eighteen inches. This inference is strengthened by the fact that there were two piles of gravel in the bed of the truck when deceased was discovered injured. The elevator was still running at the time deceased was found, which is conclusive of the fact that the witness Adams is not mistaken about deceased having cranked the motor and thereafter going to the opposite side and putting the loading machinery in motion. It was not necessary for deceased to pass between the truck and the loading machine during the process of loading.

There were three or four small bruised spots on the right side of the face of deceased, indicating that he had been struck in some manner by some objects, as insisted by plaintiff, similar in caracter to bolt heads. His head and face were crushed. It is the theory of plaintiff that the bruises were in fact caused by contact with the heads of bolts on the rear end of the truck bed, and that the de-

ceased was caught between the rear end of said truck bed and the upright pieces of the loading machine. Defendant has no definite theory as to how the accident happened. It is shown in the record, however, that deceased was a sick man on the day in question, and on one occasion complained to one of the drivers of his condition. The driver told him to go to the shade and rest, and that he would load his own truck.

At the close of the testimony, defendant entered a motion for peremptory instructions, on the theory that there was no evidence to support the verdict; and, this motion having been overruled, exceptions were saved. This along with other grounds was relied upon in motion for a new trial, and is likewise assigned here as ground of error, and will be first considered.

As set out in the declaration and insisted upon in argument, plaintiff bases her right to a recovery upon the theory that the truck of the city of Nashville was negligently moved or permitted to be moved backward in such manner as to catch and crush deceased between the rear of said truck bed and the loading machine. And it is insisted that the blue places on the right side of deceased's face were made by the heads of bolts protruding from said truck bed. But we think this position is untenable, for the reason that the angle irons of the bed protrude out past the heads of the bolts, and would necessarily have struck deceased before such boltheads. There is another serious weakness in this contention. Deceased would necessarily have been facing toward the left-hand side of the truck in order for boltheads on the rear of same to have made such marks on the right side of his face, or, stating it differently, it would have been necessary for him to have been passing from the right side of the truck to the left side, if he were passing between them. There was no reason for his passing between the truck and the loading machine, and no reason for his standing between them while in the process of loading. And consequently the driver of the truck would not be charged with any notice of his presence between them. There is no evidence of any character that the rear of the truck contained any mark or indication that it had come in contact with the head of deceased, and the only attempt to directly attempt to show such contact is the testimony of the coroner to the effect that he saw on one of the upright pieces to the loader a mark such as would have been made by a man placing his hand against it. An excellent picture of the rear of the truck bed is offered, and it is clear that there are no boltheads on it in such position as to have caused the bruises on the face of deceased, so it is necessary to reject that theory of the injury.

It is the theory of the original declaration that the driver of the truck negligently drove it against deceased without giving him any warning of his intention to do so. And in the amendment to the

declaration it is further insisted that on account of the sloping nature of the ground where the truck was standing it moved backward by force of gravity, as a result of the negligence of the driver in failing to apply his brakes. But the proof is to the effect that the ground was practically level and covered with loose gravel of sufficient depth to leave tracks when the truck moved. It is also in evidence that in front of the rear wheels of the truck there were tracks indicating its path, and that to the rear of it there were no such tracks, indicating that it had not moved forward from the position to which it had been first backed on beginning the loading process. The record is without proof as to the instrument causing the death of plaintiff's intestate. It is shown that he was picked up between the rear of the truck and the front of the loading machine with his head crushed. And we are asked to conclude that he was crushed between the bed of the truck and the loading machine, and then go further and conclude that this was the result of some act of negligence on the part of the driver of the truck of defendant. Obviously, considerable force was brought to bear upon the head of deceased in order to crush his skull as was done. But it is clear that the loading machine could not move forward or backward without some one holding the controls at the time, so that if deceased was crushed between the truck and the loading machine, and the loading machine moved, it could have been moved by no one other than deceased. And it is shown by Mr. Stewart, witness for plaintiff, that while there were tracks in front of the rear wheels of the truck, there were no such tracks to the rear of it, which unless there is some proof to the contrary must be conclusive that the truck had not been moved forward after it became stationed where it was at the time deceased was discovered. There is no proof that the truck was moved backward in such manner as to crush deceased, and we can find no satisfactory basis for concluding such to be a fact. But assuming that we could safely infer that deceased came to his death by being crushed between the rear of said truck and the loading machine, it would be necessary for us to further infer that this resulted from some negligent act of defendant's driver. This we are not privileged to do.

This court is not called upon or privileged to guess damages in favor of or against litigants. We think it possible that deceased might have been crushed by the movement of the truck of defendant, and at the same time we think it possible that he might have become entangled in some way in the machinery of the loading machine. And we think the latter the most probable, in view of the fact that deceased was a sick man at the time in question. This probability is increased by the further fact that deceased was a suffered from stomach ulcers, or had been in the past. The doctor who had treated him for such ulcers thought it probable that he had died from a hemorrhage prior to the making of an autopsy. Only a short time

before the fatal injury, deceased was in such condition that it was necessary for him to go to the shade and rest while the driver Stewart loaded his own truck. He was trying to work, when he was apparently physically unable to do so. In this condition it would not be unreasonable to conclude that he lost his balance and became entangled in the machinery of the loader. His hat was lying some considerable distance away from his body at the time he was discovered, indicating that either his hat had been jerked off or that he himself had received a sudden jerk.

Numerous cases are cited by brief counsel for plaintiff in support of the verdict and judgment in this case. It is insisted that the case of Tennessee Cent. Railroad Co. v. Herb, 134 Tenn., 397, 183 S. W., 1011, is in point as authority for supporting the judgment. In that case the plaintiff was employed by the railroad company as a night switchman. While switching cars in the yards of the company at night he was mangled by being run over by a switching train. The theory of plaintiff was that while attempting to cross the tracks his foot was caught in a hole left the day before by a section crew in making repairs to the track, and that the train ran over him while he was thus fastened. The facts in that case have little similarity to the case before us. In that case, the plaintiff was run over and injured by a train. There was no dispute of that fact. In other words, it was not necessary to infer what injured the plaintiff. And the only inference to be drawn was as to whether or not his foot was caught in holes easily capable of so catching and confining his foot.

"Conjecture cannot take the place of proof, in making out plaintiff's claim of liability against defendants; but the essential facts of plaintiff's case may be proven by circumstances." Elmore v. Thompson, 14 Tenn. App., 78, 79.

It is true that negligence may be proved by circumstantial evidence, but negligence cannot be presumed from the mere fact that plaintiff's intestate in the instant case was found in a dying condition between a loading machine operated by the deceased and a truck operated by an employee of defendant. Such a conclusion would be mere conjecture, without a vestige of proof either direct or circumstantial to support it.

We are, therefore, forced to the conclusion that there is no evidence in this record to support the verdict of the jury, and that the motion for peremptory instructions should have been granted, and that it was manifest error on the part of the trial judge to refuse same. It results that said motion is now granted, the judgment of the lower court reversed, and the suit dismissed.

Other assignments of error are urged, but they are not controlling, and they will not be further considered.